**ORDERED.**

**Dated: November 25, 2009**



_____
**EILEEN W. HOLLOWELL**
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Case No. 4:09-bk-27946-EWH |
| Arizona Equipment Rental I, LLC, | Chapter 11 |
| Debtor. | **OMNIBUS ORDER AUTHORIZING DEBTOR TO SELL INVENTORY IN THE ORDINARY COURSE OF BUSINESS** |
| | **Hearing Date: November 25, 2009** <br> **Hearing Time: 9:00 am** |

This matter came before the Court pursuant to the "*Motion for Entry of an Order Confirming Authority of the Debtor to Sell Inventory in the Ordinary Course of Business*" (the "Inventory Motion"),[1] which was filed on November 10, 2009 [Docket # 40] by Arizona Equipment Rental I, LLC, debtor and debtor-in-possession in the above-captioned case (the "Debtor" or "AER"). The Inventory Motion was supported by, among other things, the *Omnibus Declaration Of Jeffrey S. Bleecker In Support Of Chapter 11 Case* (the "Bleecker Declaration") [Docket # 7] and the Court's "*Interim Order Authorizing Debtor to Use Funds Claimed as Cash*

*Collateral*" entered November 5, 2009 (the "Interim Order") [Docket # 33].

The Inventory Motion was noticed to all Interested Parties, the United States Trustee, the twenty (20) largest unsecured creditors in the case, and all other parties that have appeared in the case. Based upon the Inventory Motion and Omnibus Response, the Bleecker Declaration, the record of the hearing and the entire record in the case, the Court finds and concludes as follows:

A. The Inventory Motion presents a "core" proceeding over which the Court has jurisdiction to grant relief pursuant to 28 U.S.C. §§157(b)(2)(A), (D), (M), (N), and (O); 11 U.S.C. §§105, 363, 507; and Bankruptcy Rule 4001.

B. In the ordinary course of its business, AER routinely sells equipment and other various inventory (the "Inventory"). Proceeds of the Inventory sold by the Debtor may be claimed as cash collateral security by various Interested Parties as set forth in the Inventory Motion.

C. It appears that the interests of the Interested Parties in the Inventory are adequately protected by the continuation of the Debtor's business and by the Replacement Liens that are granted pursuant to the Interim Order.

D. Based on all germane matters of record in this case, the Court finds that good cause presently exists to grant the Inventory Motion. Accordingly,

IT IS HEREBY ORDERED as follows:

1. The Inventory Motion shall be and hereby is granted.

2 AER is authorized to continue to sell Inventory in the ordinary course of business without further order from this Court, subject to the following conditions:

    a. To the extent any such sale occurs with regard to Inventory in which

---

[1] Unless otherwise indicated, capitalized terms used in this Order will correspond to the

an Interested Party has or may claim an interest, any lien on the particular property sold will attach to the proceeds from such sale.[2]

   b. Any curtailment or balance owed on discrete items of Inventory that are sold will be paid over to the Interested Party holding a lien on that Inventory.

   c. To the extent any such sale occurs with regard to discrete items of Inventory in which a security interest is claimed by an Interested Party,[3] in the event that the indebtedness secured by such lien exceeds the amount of the net proceeds of the proposed sale, AER will not consummate such sale until such time as an agreement is reached with the Interested Party and/or additional authority is obtained from the Court.[4] Similarly, AER will not sell Inventory in which a Lessor claims an interest without the Lessor"s consent.

   d. The Debtor will deposit and segregate the proceeds from the sale of Inventory in bank accounts maintained and serving as their debtor-in-possession bank account. The Debtor may withdraw funds from this account as necessary to pay operating and essential expenses and to purchase additional inventory. Any secured creditor's lien or security interest in Inventory constituting cash collateral will continue notwithstanding deposit in the debtor-in-possession bank accounts.

   e. Furthermore, if and to the extent necessary, AER will provide

---

capitalized terms used in the Inventory Motion.

[2] Treatment of proceeds from the sale of Inventory in which Volvo claims a lien will be in accordance with the Term Sheet dated November 23, 2009 and attached as Exhibit "B" to Debtor's Omnibus Response in Support of the Inventory Motion.

[3] Treatment of proceeds from the sale of Inventory in which Volvo claims an interest will be in accordance with the term sheet dated November 23, 2009 and attached hereto as Exhibit "A" (the "Term Sheet").

[4] The list of Inventory and the respective Equipment Lenders and/or Lessors for each discrete item is attached to the Amended Schedule B filed by AER on November 20, 2009 at Docket # 68.

parties who claim a lien in the Inventory with adequate protection for proceeds used in business operations or used for the acquisition of additional inventory through the Replacement Liens set forth in the Interim Order.

      f.      AER's surcharge rights under Section 506(c) of the Bankruptcy Code are reserved.

3. The Debtor shall serve a copy of this Order on: (i) all of the Interested Parties (as that term is defined in the Emergency Motion); (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) the United States Trustee; and (iv) any party that has appeared in the case.

**DATED AND SIGNED ABOVE**

# EXHIBIT "A"
(Term Sheet)

# Term Sheet

Debtor's Plan Proposal Term Sheet, with VFS / VRI changes
(subject execution of final definitive agreements)
(protected communication under Rule 408, FRE)

November 23, 2009

1. The following terms, unless otherwise indicated, would become effective on the effective date of the Plan, which must occur no later than March 1, 2010, or these terms are void:

   a. VFS will have an allowed, unavoidable secured claim in the amount of $6,200,000 which will be fully amortized through monthly installment payments over a 5 year period at a floating interest rate of 30 day Libor + 6% per annum. Monthly payments will equal 1/60th of the unpaid principal balance, plus interest on the unpaid principal (the "$6.2M Note").

   b. VFS will have an allowed, unavoidable unsecured claim in the amount of $3,800,000, which will be paid as follows:

   (i) $2,000,000 of VFS's unsecured claim will be fully amortized through monthly installment payments over a 10 year period at a fixed interest rate of 7% per annum. Monthly payments will equal 1/120th of the unpaid principal balance, plus interest on the unpaid principal (the "$2M Note").

   (ii) $1,800,000 of VFS's unsecured claim will be paid interest only at a fixed rate of 5.5% per annum, with all outstanding principal and interest due 5 years following the effective date of the plan and with periodic principal reductions equal to the amount of any funds actually distributed to AER's equity holders, after payment of current salaries to such equity holders, and distributions, as necessary, to the equity holders to pay tax liabilities (the "$1.8M Note"). Upon maturity, VFS will consider an extension of the $1.8M Note, in the exercise of its reasonable business judgment, based upon the business performance of AER between the effective date of the plan and maturity and upon AER's ability, at such time, to repay the same.

2. The franchise agreement between VRI and AER will be assumed and modified as follows:

   a. For the period between the commencement of the AER Chapter 11 case and March 1, 2010, no royalties will be paid to VRI.

   b. On the effective date of the plan, the existing franchise agreement will be assumed pursuant to § 365, and all pre-assumption monetary defaults under the franchise agreement, including both pre- and post-petition royalty payments, will be cured by adding the amount thereof to the principal amount of the $1.8M Note. After assumption of the agreement, AER will pay royalty payments at the contract rate. Other than with respect to pre-assumption royalty payments, AER will perform all other terms and conditions of the franchise agreement as of and after the petition date. As used in herein, the term "royalty payments" means royalties, franchise fees, program fees, marketing fees and other fees that are customary under the terms of the franchise agreement.

   c. By 1/31/10, VRI, through a third-party vendor, will implement for AER the customer portal software that has been in process, so that AER can remain competitive with other equipment lessors who have been provided similar software.

3. Volvo will provide AER with $3,000,000 of financing (the "Exit Financing") as of the effective date of the plan which will be available for use by AER in accomplishing cash pay offs of claims of other

secured lenders or lessors. The Exit Financing will be secured by the equipment and other collateral that is refinanced. The Exit Financing will be fully amortized in the same manner, and at the same interest rate, as the $6.2M Note. The Exit Financing for equipment refinanced under the Plan shall not exceed eighty-five percent (85%) of the FMV of the equipment reflected in the amended bankruptcy schedules filed by AER.

4. The existing loan documents, guarantees and agreements between AER, VRI, VFS and the guarantors will be ratified under the Plan and will survive the plan, without modification, except with respect to the financial obligations set forth above. The Exit Financing, the $6.2M Note, the $2.0M Note and the $1.8M Note shall be cross-defaulted. The Exit Financing and the $6.2 Note shall be cross-collateralized, and shall be secured with a first and senior blanket, "all assets" security interest, subject only to liens and encumbrances in favor of other creditors that survive the plan and that are not satisfied with the Exit Financing. The release prices of the inventory and equipment collateral shall be the unpaid principal balance due to VFS on each item of equipment, which, as of the effective date, shall be the FMV of the equipment and inventory reflected in the amended bankruptcy schedules filed by AER.

5. Prior to the effective date of the plan, and as adequate protection for AER's use of collateral, AER shall

    a. make adequate protection payments in the amount of $26,000 per month to VFS, with the first payment due January 5, 2010, for the period from the petition date through December 31, 2009, and with ongoing monthly payments due on the 5th day of the subsequent month until such time as payments commence on the $6.2M Note, and with $26,000 per month, for the same time period, to be added to the initial balance of the $1.8M Note;

    b. pay the amount of the FMV of the equipment/inventory reflected in the amended bankruptcy schedules filed by AER from the net sales proceeds of sales of VFS financed and non-VFS financed inventory/equipment,[1] after payment of senior secured debt against the same, if any, and 50% of the net sales proceeds from sales of AER owned inventory/equipment;

    c. provide the additional adequate protection per the Interim Order, including a security interest in the Debtor's cash on hand;

    d. Release any claims against VFS and VRI, with the same being binding on the Debtor now and binding on all creditors of the estate 60 days after the order is entered, unless a creditor or committee files an adversary proceeding within such 60 day period; and

    e. The automatic stay of § 362 shall automatically terminate, at VFS' election, and upon the filing by VFS of a notice with the Bankruptcy Court, if (A) AER defaults in providing any of the adequate protection above, and does not cure the same within five business (5) days after receiving written notice of the default from VFS, or (B) if a plan does not become effective on or before March 1, 2010, that incorporates the aforementioned terms, unless the effective date of such a plan is extended by order of the Bankruptcy Court at a hearing held after appropriate notice to VFS.

6. The foregoing deal terms are subject to the prior approval of the VFS's Executive Credit Committee, which approval will be sought, and recommended, upon acceptance of these terms by AER.
[Signatures on next page]

---

[1] By way of illustration, if, prior to the effective date of the Plan, AER sells for $60 a piece of equipment with a FMV on the amended schedules of $50 that Volvo financed for $100, then Volvo will receive $50 from the sale as adequate protection and AER keeps $10 from the sale for use in its business operations.

2305303v1/22373-0001
10925231.3

2

AGREED AND ACCEPTED this 23rd day of November, 2009.

ARIZONA EQUIPMENT RENTAL I, LLC

By _____
   Jeffrey Bleecker
Owner

VOLVO RENTS, INC.

By_____
[Name]_____
[Title]_____

VOVLO FINANCIAL SERVICES

By_____
[Name]_____
[Title]_____

Case 4:09-bk-27946-EWH    Doc 79    Filed 11/25/09    Entered 11/25/09 16:10:58    Desc
Main Document    Page 9 of 11

AGREED AND ACCEPTED this 23rd day of November, 2009.

ARIZONA EQUIPMENT RENTAL I, LLC

By _____
   Jeffrey Bleecker
Owner


VOLVO RENTS, INC.

By _*[signature]*_____
[Name] _Martin A. Moore_____
[Title] _Vice President – North America_

VOVLO FINANCIAL SERVICES

By _____
[Name] _____
[Title] _____

AGREED AND ACCEPTED this 23rd day of November, 2009.

ARIZONA EQUIPMENT RENTAL I, LLC

By_____
   Jeffrey Bleecker
Owner


VOLVO RENTS, INC.

By_____
[Name]_____
[Title]_____

VOVLO FINANCIAL SERVICES

By_____*signature*_____
[Name] Michael Woody
[Title] VRI Portfolio Manager