John R. Clemency (009646)
Lindsi M. Weber (025820)
GALLAGHER & KENNEDY, P.A.
2575 E. Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
Email:        john.clemency@gknet.com
              lindsi.weber@gknet.com
Attorneys for Debtor Arizona Equipment Rental I, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Case No. 4:09-bk-27946-EWH |
| Arizona Equipment Rental I, LLC, | Chapter 11 |
| Debtor. | |

# FIRST AMENDED DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF REORGANIZATION
## FILED BY ARIZONA EQUIPMENT RENTAL I, LLC
## DATED JANUARY 14, 2010

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................1

II. OVERVIEW OF CHAPTER 11 ...............................................................................1

    A.    Information Regarding the Plan and Disclosure Statement. ....................1
    B.    Representations. ........................................................................................2

III. BACKGROUND & EVENTS LEADING TO FILING ............................................2

IV. POST-PETITION PROCEEDINGS AND EVENTS ..............................................4

    A.    Summary of Key Events Related to the Bankruptcy Case....................4
        1.    Filing of Bankruptcy Petition..........................................................4
        2.    Retention of Professionals...............................................................4
        3.    Cash Collateral ................................................................................4
        4.    Inventory Motion .............................................................................5

V. DESCRIPTION OF ASSETS AND THEIR VALUE ...............................................6

    A.    Inventory and Personal Property of AER.............................................6
    B.    Cash and Receivables............................................................................6

VI. FINANCIAL CONDITION AND ANALYSIS .......................................................6

    A.    Present Operations. ...............................................................................6

VII. SOURCES OF INFORMATION ...........................................................................7

VIII. SUMMARY OF THE PLAN ................................................................................7

    A.    Classification and Treatment of Claims and Interests..........................8
        1.    Class 1 (Administrative Expense Claims).......................................8
        2.    Class 2 (Priority Tax Claims)...........................................................8
        3.    Class 3 (Secured Tax Claims)..........................................................8
        4.    Class 4 (Secured Claims) .................................................................8
        5.    Class 5 (Unsecured Claims).............................................................8
        6.    Class 6 (Related Parties Unsecured Claims)...................................8
        7.    Class 7 (Membership Interest in AER) ...........................................8
    B.    Summary of Treatment of Unimpaired Classes. ..................................8
        1.    Class 1 (Administrative Claims) ......................................................8
        2.    Class 7 (Membership Interest in AER) ...........................................8
    C.    Summary of Treatment of Impaired Classes.........................................8
        1.    Class 2 (Priority Tax Claims)...........................................................8

i

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

2.    Class 3 (Secured Tax Claims) ....................................................9
3.    Class 4 (Secured Claims) ...........................................................9
4.    Class 5 (Unsecured Claims). ....................................................11
    a.  Class 5(a) (Volvo Deficiency Claims).. ...........................11
    b.  Class 5(b) (Convenience Class) ........................................12
    c.  Class 5(c) (Other Deficiency Claims) ..............................12
    d.  Class 5(d) (Lease Rejection Claims)..................................13
    e.  Class 5(e) (General Unsecured Claims) ...........................13
5.    Class 6 (Related Parties Unsecured) ........................................13

IX. OVERVIEW OF ADDITIONAL PLAN PROVISIONS ......................................14
A.    Implementation of the Plan & Conditions to Effectiveness. ...............14
    1.    Conditions Precedent to Occurrence of Effective Date ..........14
    2.    Implementation ........................................................................14
B.    Resolution of Claims, Demands, and Causes of Action. ....................14
    1.    Preservation of Debtor' Claims, Demands, and Causes of Action ........14
    2.    Procedure for Determination of Claims. ...............................15
    3.    Administrative Claims Bar Date .............................................15
C.    Treatment of Executory Contracts. ......................................................15
    1.    Rejection of Executory Contracts ...........................................15
    2.    Assumption of Other Executory Contracts ...........................15
    3.    Rejection Claims Bar Date........................................................15
D.    Miscellaneous Plan Provisions. ............................................................16
    1.    Retention of Jurisdiction .........................................................16
    2.    Exculpation and Limitation of Liability.................................16
    3.    General Injunction...................................................................16
    4.    Vesting .....................................................................................16
    5.    Payment of Statutory Fees and Filing of Quarterly Reports ..................16

X. Federal Tax Consequences .............................................................................17
A.    No Federal Tax Consequences. .............................................................17

XI. VOTING PROCEDURES AND REQUIREMENTS .........................................17
A.    Parties Entitled to Vote. ........................................................................17
B.    Procedures for Voting. ..........................................................................17
    1.    Submission of Ballots .............................................................17
    2.    Procedures for Vote Tabulation .............................................18
    3.    Withdrawal of Ballots .............................................................18
    4.    Questions and Lost or Damaged Ballots................................18
C.    Summary of Voting Requirements........................................................18

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

XII. LIQUIDATION ANALYSIS ..................................................................................19

XIII. CONFIRMATION OF THE PLAN ........................................................................19

    A.    Confirmation Hearing. ............................................................................19
    B.    Objections to Confirmation. ...................................................................19
    C.    Requirements for Confirmation of the Plan. ..........................................20
        1.    Confirmation Under Section 1129(a) of the Bankruptcy Code ...............20
        2.    Debtor Believes the Plan Satisfies Bankruptcy Code Requirements. ......20

XIV. ALTERNATIVES TO THE PLAN ........................................................................22

RECOMMENDATION AND CONCLUSION ...............................................................23

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1
2
3
4
5
6
7
8
9
)

!
;
|
;
)
'
18
19
20
21
22
23
24
25
26

# I.
# INTRODUCTION

Pursuant to 11 U.S.C. § 1125, Arizona Equipment Rental I, LLC ("AER" or the "Debtor"), the debtor in the above-referenced bankruptcy case, hereby submits its *First Amended Disclosure Statement in Support of Plan of Reorganization Filed by Arizona Equipment Rental I, LLC*, dated January 14, 2010 (the "Disclosure Statement"). The purpose of this Disclosure Statement is to provide adequate information to the holders of claims or interests in this matter so that they may make an informed judgment in exercising their right to vote for acceptance or rejection of the *First Amended Plan of Reorganization Filed by Arizona Equipment Rental I, LLC dated January 14, 2010* (the "Plan"), a copy of which is attached as Exhibit "A". **THE DEBTOR RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN IN ORDER TO MAXIMIZE THE RECOVERY OF YOUR CLAIM.**

Capitalized terms used in this Disclosure Statement will correspond to terms defined in the Plan and the Bankruptcy Code. Terms used in this Disclosure Statement that are also defined in the Plan are defined solely for convenience; and the Debtor does not intend to change the definitions of those terms from the Plan. If there is any inconsistency between the Plan and this Disclosure Statement, the Plan is, and will be, controlling.

# II.
# OVERVIEW OF CHAPTER 11

## A.    Information Regarding the Plan and Disclosure Statement.

The objective of a Chapter 11 case is the confirmation (*i.e.*, approval by the Bankruptcy Court) of a plan of reorganization or liquidation. A Chapter 11 plan describes in detail (and in language appropriate for a legal contract) the means for satisfying the claims against and equity interests in a debtor. After a plan has been filed, the holders of claims and equity interests are permitted to vote to accept or reject the plan. Before a debtor can solicit acceptances of its plan, however, Section 1125 of the Bankruptcy Code requires the debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable those parties entitled to vote on the plan to make an informed judgment about the plan and about whether they should accept or reject the plan.

The purpose of this Disclosure Statement is to provide sufficient information about the Debtor and the Plan to enable you to make an informed decision in exercising your right to accept or reject the Plan. Therefore, this Disclosure Statement provides relevant information about the Debtor, its property and financial condition, and the Plan.

This Disclosure Statement will be used to solicit acceptances of the Plan only after the Bankruptcy Court has entered an order approving this Disclosure Statement. Approval by the Bankruptcy Court of this Disclosure Statement means only that the Bankruptcy Court has found that this Disclosure Statement contains sufficient information for the Debtor to transmit the Plan and Disclosure Statement to Creditors and to solicit acceptances of the Plan.

1

After the Bankruptcy Court has granted approval of this Disclosure Statement and there has been voting on the Plan, the Bankruptcy Court will conduct a Confirmation Hearing concerning whether the Plan should be approved. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code. The Bankruptcy Court also will receive and consider a ballot report prepared by the Debtor that will present a tally of the votes accepting or rejecting the Plan cast by those entitled to vote. Accordingly, all votes are important because they can determine whether the Plan will be confirmed. Once confirmed, the Plan is essentially a new contract between the Debtor and its Creditors and is binding on all Creditors and other parties-in-interest in the Debtor's Bankruptcy Case regardless of whether any particular Creditor voted to accept the Plan.

**THIS DISCLOSURE STATEMENT IS NOT THE PLAN. FOR THE CONVENIENCE OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT. ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN WILL CONTROL.**

**B.      Representations.**

This Disclosure Statement has not been subjected to a certified audit; however, it has been prepared in part from information compiled by the Debtor from records maintained by it in the ordinary course of its business or from information received by the Debtor from third parties. Every effort has been made to be as accurate as possible in the preparation of this Disclosure Statement. Nevertheless, the inclusion of financial information in this Disclosure Statement and exhibits is subject to adjustment, and the Debtor reserves all rights to object to or challenge any Claims that are filed or asserted in the Case.

This is a solicitation by the Debtor only and is not a solicitation by its attorneys, agents, financial advisors, or accountants. No statement or information concerning the Debtor or its assets or securities are authorized, other than those set forth in the Disclosure Statement.

**III.**
**BACKGROUND & EVENTS LEADING TO FILING**

Arizona Equipment Rental I, LLC ("AER") is an Arizona limited liability company operating in Tucson, Thatcher, Miami, and Eloy, Arizona. AER was founded by Lance Evic and Jeffrey Bleecker in 2004 as a Volvo Rents franchise construction equipment rental company serving Arizona. AER is headquartered in Tucson, Arizona, and currently employs approximately 30 employees. Lance Evic possesses an extensive career background in the rental industry, with over 25 years work experience. Prior to getting involved with AER, Jeffrey Bleecker owned a local manufacturing business for 17 years.

AER experienced very rapid growth during the first 3 years of operation. Starting with a fleet of approximately $3.5MM in April of 2004, AER grew to a fleet of over $30MM as of July 31, 2008. AER exceeded projected performance, as measured by its initial business plan, and became profitable by month 6 of operation. By the end of the second year of operations, AER had opened a second store and posted profits of well over $1MM.

AER's successful business philosophy consists of several basic principles: (i) create a business culture and environment to attract and retain the best performing professionals in the market; and (ii) create a business atmosphere of excellence whereby company culture is based on a desire to achieve a higher standard of service, provide better, newer equipment and have a more extensive fleet than the competition. AER seeks to attract and retain business relationships with A-level contractors in the community by surpassing competitors' offerings and exceeding the expectations of customers. AER strives to set itself apart from all competitors in the marketplace in critical areas including reliable equipment and selection, as well as friendly, responsive service.

In the fall of 2008, AER experienced a severe reduction in revenues due to the rapid and dramatic slow down of construction and mining activity in the State of Arizona. This decreased demand has resulted in severely reduced time utilization of equipment, as well as a sharp cut in rental rates. Overall revenues since the Fall of 2008 have fallen by more than sixty percent (60%). AER is seeking to effectuate a financial restructuring with its lenders in order to return to profitability. For the year ending 2008, Debtor had total revenue less equipment sales of $14,339,928 and generated a net profit of $1,625,956 based on the unaudited financial statements of the company.

Volvo Financial Services ("Volvo") is the Debtor's largest secured creditor. As of October 1, 2009, Volvo claimed that the Debtor owed approximately $9,817,037.25. The Volvo Loan includes a master loan and security agreement, with separate notes for each piece of equipment that is financed.

JLG Finance ("JLG") is also a secured creditor of Debtor, and has acquired various loans from other secured lenders of Debtor. Pursuant to these various loan and security agreements, JLG claims a secured interest in some of the equipment, receivables, cash, and other assets of the Debtor's business. As of October 1, 2009, JLG claimed that the Debtor owed approximately $1,483,929.04 pursuant to the Wells Fargo loan agreement; approximately $1,065,370.63 pursuant to the US Bancorp loan agreement; and approximately $479,400 pursuant to the GE Capital/Ingersoll Rand loan agreement.

GE Commercial Distribution Finance ("GE CDF"), John Deere Credit ("JDC"), CNH Capital ("CNH"), Huntington Equipment Finance ("Huntington") and Komatsu Financial Limited Partnership ("Komatsu") are also secured creditors of Debtor, and each claim a secured interest in some of the equipment, receivables, cash, and/or other assets of the Debtor's business. As of the Petition Date, GE CDF claims that the Debtor owed approximately $1,575,125.26; JDC claims that over $330,000 was owed; and Komatsu claims that approximately $147,539.14 was owed. The CNH loan agreement was purportedly transferred to PNCEF, LLC ("PNC"), and PNC claims that the Debtor owes approximately $125,728.80.

In addition, Debtor entered into lease agreements with People's Capital, National City Commercial Capital, and Siemens Financial Services, Inc. Debtor will either assume or reject those leases by January 4, 2010.

Over the course of the 2009 year, AER attempted to negotiate with its secured lenders to obtain modified loan terms that would allow AER to continue to maintain profitable business operations. Unable to reach agreements with many of its secured lenders and lessors, AER filed the instant bankruptcy case on October 30, 2009 to assist the Debtor with restructuring certain liabilities and maximizing its assets, so that the Debtor's business and cash flow can normalize and continue to be profitable. Debtor has continued to provide equipment rentals and services to its existing and future customers during the pendency of these proceedings.

## IV.
## POST-PETITION PROCEEDINGS AND EVENTS

**A.**   **Summary of Key Events Related to the Bankruptcy Case.**

While more detailed information related to the events in the Bankruptcy Case can be obtained by assessing the Bankruptcy Court's CM/ECF filing system and reviewing the pleadings filed in Case No. 4:09-bk-27946-EWH, the following is a summary of certain key bankruptcy-related proceedings and events associated with this Bankruptcy Case:

**1.**   **Filing of Bankruptcy Petition**. On October 30, 2009 (the "Petition Date"), AER filed a voluntary Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the District of Arizona. This bankruptcy case is currently being administered under Bankruptcy Case No. 4:09-bk-27946-EWH.

**2.**   **Retention of Professionals**. On October 30, 2009, the Debtor filed the *Application for an Order Under 11 U.S.C. § 327(A) Authorizing the Employment of Gallagher & Kennedy, P.A. as General Counsel to the Debtor* (Docket no. 2) seeking authorization for Gallagher & Kennedy, P.A. ("G&K") to perform legal services for the Debtor which may be necessary and proper in these proceedings, including provide legal advice with respect to the powers and duties of a debtor-in-possession; to prepare necessary legal papers; to appear in court and to assist with any disposition of assets by sale or otherwise. On or about November 5, 2009, Debtor was authorized to retain G&K as its general counsel in connection with the bankruptcy case (Docket no. 31).

Also on October 30, 2009, the Debtor filed the *Application for an Order Under 11 U.S.C. § 327(A) Authorizing the Employment of Peritus Commercial Finance, LLC as Financial Advisor to the Debtor* (Docket no. 4) seeking authorization for Peritus Commercial Finance, LLC ("Peritus") to provide financial advice to the Debtor relating to this case. On or about November 5, 2009, Debtor was authorized to retain Peritus as its financial advisor in connection with the bankruptcy case (Docket no. 32).

**3.**   **Cash Collateral**. On October 30, 2009, the Debtor filed the *Emergency Motion for Interim Order to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363* (the "Cash Collateral Motion"; Docket no. 8). Through the Cash Collateral Motion, the Debtor sought an interim order

authorizing it to pay necessary and essential post-petition operating expenses with certain cash and cash equivalents in which various entities claimed or may claim an interest. The Bankruptcy Court held a preliminary hearing on the Cash Collateral Motion on November 4, 2009 and entered an interim order authorizing the Debtor's use of cash collateral (Docket no. 33). The Court also set a final hearing on the matter for November 25, 2009.

The following objections were filed in response to Debtor's Cash Collateral Motion: *Notice of Nonconsent to Use of Cash Collateral* filed by Volvo Commercial Finance (Docket no. 12); *Objection to Emergency Motion for Use of Cash Collateral and Motion for Adequate Protection* filed by Volvo Commercial Finance (Docket no. 18); *Response of GE Commercial Distribution Finance Corporation* (Docket no. 26); and *Objection to Proposed Interim Cash Collateral Order* filed by People's Capital and Leasing Corp. (Docket no. 27). The Court entered its final Order on the Cash Collateral Motion after arguments at the hearing on November 25, 2009 (Docket no. 78).

**4.** **Inventory Motion**. On November 10, 2009, the Debtor filed a *Motion for Entry of an Order Confirming Authority of the Debtor to Sell Inventory in the Ordinary Course of Business* (the "Inventory Motion"; Docket no. 40). Through the Inventory Motion, Debtor sought confirmation to continue to sell certain inventory items in the ordinary course of its business operations.

The following objections were filed in response to Debtor's Inventory Motion: *Limited Objection of GE Fleet Services to Debtor's Motion* (Docket no. 47); *People's Capital and Leasing Corp.'s Limited Objection to Debtor's Motion* (Docket no. 51); *Objection to Motion for Entry of Order Confirming Authority of Debtor to Sell Inventory in the Ordinary Course of Business* filed by John Deere Construction and Forestry Company (Docket no. 58); *Limited Objection to Motion for an Order Confirming Authority of Debtor to Sell Inventory in the Ordinary Course of Business* filed by Komatsu Financial Limited Partnership (Docket no. 59); *Limited Objection to Motion to Sell Inventory in the Ordinary Course* filed by Siemens Financial Services (Docket no. 62); *Omnibus Limited Objection to (I) Entry of Final Order Authorizing Debtor to Use Funds Claimed as Cash Collateral and (II) Debtors Motion for Entry of an Order Confirming Authority of the Debtor to Sell Inventory in the Ordinary Course of Business* filed by JLG Industries, Inc. (Docket no. 65); *Limited Objection of GE Commercial Distribution to Debtor's Motion* (Docket no. 66); and *Objection to Motion to Approve Sales in the Ordinary Course* filed by VFS US, LLC (Docket no. 72).

Debtor filed an *Omnibus Response to Objections to Debtor's Motion for an Order Confirming Authority of the Debtor to Sell Inventory in the Ordinary Course of Business* on November 24, 2009 (Docket no. 77). After arguments at the hearing on November 25, 2009, the Court entered its Order granting the Inventory Motion (Docket no. 79).

**5.** **Lease Rejection Motion**. On January 8, 2010, the Debtor filed a *Motion for Order Under 11 U.S.C. Section 365(a) Authorizing the Debtor to Reject Certain Unexpired Personal Property Leases* (the "Lease Rejection Motion"; Docket no. 112). Through the Lease Rejection Motion, Debtor sought authorization to reject certain personal property leases between the Debtor and Huntington, Siemens, and PNC respectively.

**6. Disclosure Statement Proceedings.** On December 4, 2009, the Debtor filed its *Disclosure Statement in Support of Plan of Reorganization Filed by Arizona Equipment Rental I, LLC, dated December 4, 2009* (the "Original Disclosure Statement"; Docket no. 88). Objections to the Original Disclosure Statement were filed by GE Commercial Distribution Finance Corporation ("GECDF") on January 7, 2010 (Docket No. 110) and by Volvo Financial Services ("VFS") on January 6, 2010 (Docket No. 108).

On January 12, 2010, the Court held a hearing on the Original Disclosure Statement and required the Debtor to amend the certain sections to resolve the outstanding objections and include the information requested by interested parties. Thereafter, on January 13, 2010, the Court issued its Minute Entry Order requiring six specific revisions to the Original Disclosure Statement (Docket No. 119). This First Amended Disclosure Statement addresses, among other things, the six items requested by the Court as well as those raised by various interested parties.

## V.
## DESCRIPTION OF ASSETS AND THEIR VALUE

**A.    Inventory and Personal Property of AER.**

As set forth in Debtor's Amended Schedule B (Docket no. 68), Debtor maintains an extensive inventory of owned and leased equipment. The value of the inventory and office equipment in Debtor's possession, as of October 30, 2009, was approximately $10,742,971.89. An updated inventory list, dated November 30, 2009, is attached as Exhibit "B".

**B.    Cash and Receivables.**

In addition to the property listed above, Debtor's accounts receivable were approximately $1,319,638.57 as of the Petition Date. Finally, as of the Petition Date, the Debtor had unencumbered cash on hand in excess of $550,000. Balance sheets and profit and loss statements reflecting updated cash and receivables amounts from AER for the month of November 2009 are attached to this Disclosure Statement as Exhibit "C".

## VI.
## FINANCIAL CONDITION AND ANALYSIS

**A.    Present Operations.**

The Debtor's business is currently income producing. However, the recent economic downturn, especially with regard to the construction and mining industries, has negatively impacted the Debtor's cash flow and ability to service debt. Debtor is current on all ordinary course post-petition obligations. Recently, the Debtor terminated certain leases and returned equipment, thereby reducing its expenses and fleet size.

In addition, Debtor recently reached an agreement with Volvo Financial Services, its largest secured lender, to restructure its debt obligation. Pursuant to the Term Sheet dated November 23, 2009, a copy of which is attached to this Disclosure Statement as Exhibit "D", the parties have agreed to an Approved Secured Claim for Volvo in the approximate amount of $6.2

million, and an unsecured claim in the amount of approximately $3.8 million. In addition, Volvo has agreed to provide Exit Financing in the amount of $3 million to allow Debtor to accomplish restructuring and/or payoffs of its other secured debts.

## B.     Future Operations.

With the reduction in expenses and fleet size that the Debtor has already accomplished during the pendency of this Bankruptcy Case, combined with the debt restructuring set forth in the Plan, the Reorganized Debtor will operate under the current management and will continue to provide equipment rentals and services to its existing and future customers.

## VII.
## SOURCES OF INFORMATION

The financial information contained in this Disclosure Statement is derived from a number of sources. Values ascribed to AER's Assets were provided by the Debtor. Information on Claims of Creditors was obtained from the financial records of the Debtor and the statements and schedules on file in the Bankruptcy Case.

The information contained in this Disclosure Statement represents the Debtor's best estimate in light of current market conditions and past experience. All the information provided is subject to change and represents the best information available at the time, the actual results may differ.

Specifically, the asset valuations for Equipment were compiled by the Debtor from a combination of recent sale results from equipment auctions, equipment broker listings, broker input, and advertisements for equipment of like kind and age listed in Machinery Trader and similar publications.

The accounting and financial information provided by the Debtor is based on Generally Accepted Accounting Principles ("GAAP") and the calculations were prepared by the Debtor's controller, Mr. Derek Miller.

## VIII.
## SUMMARY OF THE PLAN

The following provides a summary of the overall structure and classification of claims against or interests of or in the Debtor and is qualified in its entirety by reference to the Plan, which is attached as Exhibit "A". The statements in this Disclosure Statement include summaries of the provisions contained in the Plan. This summary does not purport to be a complete statement of all terms in the Plan, and reference is made to the Plan for the full and complete statement of such terms. The Plan controls the treatment of Claims against and Equity Interests of and in the Debtor and other parties-in-interest. Where Claims are divided into subclasses in the Plan, each subclass will be considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

**A.    Classification and Treatment of Claims and Interests.**

**1.    Class 1 (Administrative Expense Claims).** Class 1 consists of all Allowed Administrative Expense Claims against AER.

**2.    Class 2 (Priority Tax Claims).** Class 2 consists of all Allowed Priority Tax Claims against AER.

**3.    Class 3 (Secured Tax Claims).** Class 3 consists of all Allowed Secured Tax Claims against AER.

**4.    Class 4 (Secured Claims).** Class 4 consists of all Allowed Secured Claims against AER, in the amounts set forth below for each respective creditor.

**5.    Class 5 (Unsecured Claims).** Class 5 consists of all Allowed Unsecured Claims held against AER by all Unsecured Creditors, including deficiency claims of secured creditors against AER.

**6.    Class 6 (Related Parties Unsecured Claims).** Class 6 consists of all Allowed related Parties Unsecured Claims by all individuals or affiliated entities that have made unsecured loans to AER.

**7.    Class 7 (Membership Interest in AER).** Class 7 consists of the membership interests of the members of AER.

**B.    Summary of Treatment of Unimpaired Classes.**

**1.    Class 1 (Administrative Claims).** Every Creditor holding an Allowed Class 1 Claim will be paid, in full satisfaction of the Allowed Class 1 Claim: (a) fully and in Cash on or before the Effective Date if the Claim is then an Allowed Claim: (b) fully and in Cash when and if the Claim becomes an Allowed Claim after the Effective Date; or (c) as otherwise agreed in writing by the Creditor holding the Allowed Claim or ordered by the Bankruptcy Court. Allowed Class 1 Claims will be paid from Cash held by AER. Class 1 Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Class 1 Claims.

**2.    Class 7 (Membership Interest in AER).** The members of AER will retain their respective membership interest in AER. Class 7 Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Class 7 Claims.

**C.    Summary of Treatment of Impaired Classes.**

**1.    Class 2 (Priority Tax Claims).** To the extent Priority Tax Claims exist on the Effective Date, those holders of Priority Tax Claims will be paid from Cash held by the Estate over a period not exceeding five (5) years after the Petition Date. Class 2 Claims are impaired, and holders of Allowed Class 2 Claims will be entitled to vote to accept or reject the Plan.

**2.** **Class 3 (Secured Tax Claims)**. Allowed Class 3 Claims will be paid quarterly in equal installments of principal and interest, over a period of five (5) years after the Effective Date. Interest will accrue, in accordance with § 511 of the Bankruptcy Code and § 42-18053 of the Arizona Revised Statutes, on the unpaid principal balance of the Class 3 Claims from and after the Effective Date. The first payment on Allowed Class 3 Claims will be made on the date which is ninety (90) days after the Effective Date. Holders of Allowed Class 3 Claims will retain their liens on any Assets of AER that serve as security for repayment of Allowed Class 3 Claims. Class 3 Claims are impaired and holders of Allowed Class 3 Claims will be entitled to vote to accept or reject the Plan..

**3.** **Class 4 (Secured Claims)** The Allowed Class 4a1 and 4a2 Claims of Volvo will be paid the Allowed Amount set forth below, in accordance with the provisions of the Term Sheet and addendum which are attached as Exhibit "A" to the Plan. Allowed Class 4c through Class 4h Claims will be paid the Allowed Amount set forth below in Classes 4c through Class 4h through monthly payments of principal and interest according to a five (5) year amortization schedule, with interest at the rate of five percent (5%) per annum, beginning thirty (30) days after the Effective Date of the Plan. Class 4 Claims are impaired, and holders of Allowed Class 4 Claims will be entitled to vote to accept or reject the Plan.

| Class | Description | Allowed Amount(1)(2)(3) | Monthly Plan Payments | Annual Plan Payments |
|-------|-------------|-------------------------|-----------------------|----------------------|
| 4a1 | *Volvo Financial Services* | $ 6,200,000 | $ 120,585 | $ 1,447,020 |
| 4a2 | *Volvo Financial Services (Retail Claim)* | $ 79,900 | $ 1,554 | $ 18,648 |
| 4b1 | *JLG Finance (formerly Wells Fargo)* | elected Discounted Payoff option | | |
| 4b2 | *US Bancorp (JLG)* | elected Discounted Payoff option | | |
| 4b3 | *GE Capital Lease (JLG)* | elected Discounted Payoff option | | |
| 4c | *John Deere Credit* **(4)** | $ 289,800 | $ 5,468 | $ 65,616 |
| 4d | *CNH Capital (formerly Case Capital)(5)* | $ 72,000 | $ 1,358 | $ 16,296 |
| 4e | *Ford(6)* | $ 27,900 | $ 526 | $ 6,312 |
| 4f | *GE CDF(7)* | $ 373,050 | $ 7,039 | $ 84,468 |
| 4g | *Komatsu (8)* | $ 124,200 | $ 2,343 | $ 28,116 |
| 4h | *GE Capital/Ingersoll* | $ 279,900 | $ 5,282 | $ 63,384 |

| | *Rand(9)* | | | |
|---|---|---|---|---|

(1) AER reserves the right to return equipment to the holders of Class 4 Claims in exchange for a credit against the debt equal to the fair market value of the returned equipment, as set forth in Exhibits "B" through "G".

(2) The Allowed Amounts of Class 4 Claims are subject to revision or adjustment as of the Effective Date based upon credits, payments, offsets, and/or sales of equipment.

(3) The Debtor is authorized to sell equipment that is subject to the liens of the holders of Allowed Claims in Classes 4c through 4h for the current fair market value amounts set forth in Exhibits "B" through "G" (subject to downward adjustment for payments made to the holders of Allowed Claims in Classes 4c through 4h, the "Release Price").

(4) The holder of Allowed Class 4c Claims (John Deere Credit) will retain its Liens on the equipment that is listed in Exhibit "B" to the Plan, and except as modified by the terms and provisions of the Plan, the loan documents executed by AER prior to the Petition Date with respect to the Class 4c Claims will remain in effect.

(5) The holder of Allowed Class 4d Claims (CNH Capital) will retain its Liens on the equipment that is listed in Exhibit "C" to the Plan, and except as modified by the terms and provisions of the Plan, the loan documents executed by AER prior to the Petition Date with respect to the Class 4d Claims will remain in effect. As an alternative to the treatment provided above, CNH Capital may elect to receive its Equipment back in full satisfaction of all claims.

(6) The holder of Allowed Class 4e Claims (Ford) will retain its Liens on the equipment that is listed in Exhibit "D" to the Plan, and except as modified by the terms and provisions of the Plan, the loan documents executed by AER prior to the Petition Date with respect to the Class 4e Claims will remain in effect.

(7) The majority of the equipment financed by the holder of Class 4f Claims (GECDF) will be surrendered to GECDF on the Effective Date. The holder of Allowed Class 4f Claims (GECDF) will retain its lien on the equipment that is listed in Exhibit "E" to the Plan, and except as modified by the terms and provisions of the Plan, the loan documents executed by AER prior to the Petition Date with respect to the Class 4f Claims will remain in effect.

(8) The holder of Allowed Class 4g Claims (Komatsu) will retain its Liens on the equipment that is listed in Exhibit "F" to the Plan, and except as modified by the terms and provisions of the Plan, the loan documents executed by AER prior to the Petition Date with respect to the Class 4g Claims will remain in effect.

(9) The holder of Allowed Class 4h Claims (GE Capital/Ingersoll Rand) will retain its Liens on the equipment that is listed in Exhibit "G" to the Plan, and except as modified by the terms and provisions of the Plan, the loan documents executed by AER prior to the Petition Date with respect to the Class 4h Claims will remain in effect.

As an alternative to the treatment provided to Class 4 under the Plan, and to the extent AER obtains financing, in full satisfaction of all Class 4 Claims against AER, holders of Allowed Class 4b through Class 4h Claims may elect a discounted payoff in a lump sum equal to eighty-five percent (85%) of the Allowed Class 4 Claims, payable on the Effective Date (the "Discounted Payoff"). Upon receipt the Discounted Payoff, all Claims held by an electing Class 4 Creditor, including corresponding Class 5 Claims of the electing Class 4 Creditor, will be satisfied in full.

| Class | Description | Allowed Amount(1) | Discounted Payoff Amount (1) |
|---|---|---|---|
| **4b1** | *JLG Finance (formerly Wells Fargo) (2)* | | $ 601,350 |

| 4b2 | JLG Finance (formerly US Bancorp) | elected Discounted Payoff option | $ 595,800 |
| 4b3 | JLG Finance (formerly GE Capital Lease) | | $ 216,900 |
| 4c | John Deere Credit | $ 289,800 | $ 246,330 |
| 4d | CNH Capital (formerly Case Capital) | $ 72,000 | $ 61,200 |
| 4e | Ford | $ 27,900 | $ 23,715 |
| 4f | GE CDF | $ 373,050 | $ 317,092 |
| 4g | Komatsu | $ 124,200 | $ 105,570 |
| 4h | GE Capital/Ingersoll Rand | $ 279,900 | $ 237,915 |

(1) The Allowed Amounts of Class 4 Claims are subject to revision or adjustment as of the Effective Date based upon credits, payments, offsets, adequate protection payments, and/or sales of equipment.

(2) The Discounted Payoff of the Class 4b1, 4b2, and 4b3 Claims of JLG Finance will be made in accordance with the terms and conditions of the agreement between AER and JLG Finance which is attached as Exhibit "H" to the Plan.

## 4. **Class 5 (Unsecured Claims).**

**a. Class 5(a) (Volvo Deficiency Claims).** Class 5(a)[1] consists of the Deficiency Claims of Volvo. Class 5(a) Claims are impaired and holders of Allowed Class 5(a) Claims will be entitled to vote to accept or reject the Plan.

**(i) Class 5(a)(i) (Volvo $2 million Deficiency Claim).** Allowed Class 5(a)(i) Claims will be paid monthly according to a ten (10) year amortization schedule, with interest at the rate of seven percent (7%) per annum beginning thirty (30) days after the Effective Date of the Plan.

| Class | Allowed Amount | Monthly Plan Payments | Annual Plan Payments |
|---|---|---|---|
| 5(a)(i) | $ 2,000,000 | $23,222 | $278,664 |

**(ii) Class 5(a)(ii) (Volvo $1.8 million Deficiency Claim).** Allowed Class 5(a)(ii) Claims will receive monthly payments of interest only at the rate of five and a half percent (5.5%) per annum beginning thirty (30) days after the Effective Date of the Plan for (5) years, with an option in favor of the Reorganized Debtor for an additional five (5) years of monthly payments of interest only to Volvo if the payments under the Plan on year 5 are current. All unpaid principal and interest owing to the holders of Allowed Class 5(a)(ii) Claims will be paid on either the fifth (5th) or tenth (10th) anniversary of the Effective Date of the Plan.

| Class | Allowed Amount | Monthly Plan Payments | Annual Plan Payments |
|---|---|---|---|

---

[1] The treatment of Volvo's Deficiency Claims will be according to the Term Sheet and addendum which are attached as Exhibit "A" to the Plan.

| 5(a)(ii) | $ 1,800,000 | $8,250 | $99,000 |

**b. Class 5(b) (Convenience Class).** Class 5(b) consists of Convenience Class Claims. Allowed Class 5(b) Claims, estimated in the aggregate amount of $32,000, will be paid sixty (60) days following the Effective Date of the Plan. Holders of Class 5(b) Claims are impaired by the Plan.

**(i) Election for Convenience Class.** An Allowed General Unsecured Claim in an amount of $5,000 or less, or any General Unsecured Claim that is reduced to $5,000 by election of the holder thereof as provided on the Ballot; provided that, for these purposes, all such General Unsecured Claims held by an entity or by an entity and any Affiliate of such entity shall be aggregated and treated as one such General Unsecured Claim; provided further that if all or any part of a General Unsecured Claim was or is assigned, the General Unsecured Claim held by all assignees of such General Unsecured Claim shall be treated collectively as one such General Unsecured Claim for purposes of this definition.

**c. Class 5(c) (Other Deficiency Claims).** Class 5(c) consists of Deficiency Claims of the creditors listed in Classes 4(c)-(h), assuming that such creditors do not elect the alternative Discounted Payoff option. Allowed Class 5(c) Claims will receive monthly payments of interest only at the rate of five and a half percent (5.5%) per annum beginning thirty (30) days after the Effective Date of the Plan for five (5) years, with an automatic option in favor of the Reorganized Debtor for an additional five (5) years of monthly payments of interest only to the holders of Allowed Class 5(c) Claims if the payments under the Plan on year 5 are current. All unpaid principal and interest owing to the holders of Allowed Class 5(c) Claims will be paid on the fifth (5th) or tenth (10th) anniversary of the Effective Date of the Plan. Class 5(c) Claims are impaired and holders of Allowed Class 5(c) Claims will be entitled to vote to accept or reject the Plan. Holders of Allowed Class 5(c) Claims will be entitled to a pro rata distribution of periodic principal reductions equal to the amount of any funds actually distributed to the Debtor's equity holders, after payment of current salaries to such equity holders, and distributions, as necessary, to the equity holders to pay tax liabilities.

| Description | Allowed Amount(1) | Monthly Plan Payments | Annual Plan Payments |
|---|---|---|---|
| John Deere Credit | $ 32,981 | $ 151 | $ 1,812 |
| CNH Capital (formerly Case Capital) | $ 53,728 | $ 246 | $ 2,952 |
| Ford | $ 9,900 | $ 45 | $ 540 |
| GE CDF(2) | $ TBD | $ TBD | $ TBD |
| Komatsu(3) | $ TBD | $ TBD | $ TBD |
| GE Capital/Ingersoll Rand | $ 111,800 | $ 512 | $ 6,144 |

(1) Payments to the holders of Allowed Class 5(c) Other Deficiency Claims are subject to revision or adjustment as of the Effective Date based upon credits, payments, offsets, adequate protection payments, and/or sales of equipment.

(2) GE CDF is of the view that there is equity in its equipment, and therefore any equipment that is returned to GE CDF will result in no deficiency claim on any such equipment.

(3) Komatsu is of the view that there is equity in certain pieces of its equipment, and therefore any such equipment that is returned to Komatsu will result in no deficiency claim on the equipment.

**d. Class 5(d) (Lease Rejection Claims).** Class 5(d) consists of claims for damages relating to the rejection of various leases and executory contracts. Allowed Class 5(d) Claims will receive monthly payments of interest only at the rate of five and a half percent (5.5%) per annum beginning thirty (30) days after the Effective Date of the Plan for five (5) years, with an automatic option in favor of the Reorganized Debtor for an additional five (5) years of monthly payments of interest only to the holders of Allowed Class 5(d) Claims if the payments under the Plan on year 5 are current. All unpaid principal and interest owing to the holders of Allowed Class 5(d) Claims will be paid on the fifth (5th) or tenth (10th) anniversary of the Effective Date of the Plan. Class 5(d) Claims are impaired and holders of Allowed Class 5(d) Claims will be entitled to vote to accept or reject the Plan. Holders of Allowed Class 5(d) Claims will be entitled to a pro rata distribution of periodic principal reductions equal to the amount of any funds actually distributed to the Debtor's equity holders, after payment of current salaries to such equity holders, and distributions, as necessary, to the equity holders to pay tax liabilities.

**e. Class 5(e) (General Unsecured Claims).** Class 5(e) consists of General Unsecured Claims other than General Unsecured Claims in Classes 5(a) through 5(d). Allowed Class 5(e) Claims will receive monthly payments of interest only at the rate of five and a half percent (5.5%) per annum beginning thirty (30) days after the Effective Date of the Plan for five (5) years, with an automatic option in favor of the Reorganized Debtor for an additional five (5) years of monthly payments of interest only to the holders of Allowed Class 5(e) Claims if the payments under the Plan on year 5 are current. All unpaid principal and interest owing to the holders of Allowed Class 5(e) Claims will be paid on the fifth (5th) or tenth (10th) anniversary of the Effective Date of the Plan. Class 5(e) Claims are impaired and holders of Allowed Class 5(e) Claims will be entitled to vote to accept or reject the Plan. Holders of Allowed Class 5(e) Claims will be entitled to a pro rata distribution of periodic principal reductions equal to the amount of any funds actually distributed to the Debtor's equity holders, after payment of current salaries to such equity holders, and distributions, as necessary, to the equity holders to pay tax liabilities.

**5. Class 6 (Related Parties Unsecured).** Class 6 consists of Unsecured Claims of Related Parties. Jeffrey and Lisa Bleecker have made numerous loans to the Debtor since the company was founded. As of the Petition Date, the balance due and owing to the Bleeckers was approximately $2,343,630 (the "Bleecker Loan"). Lance and Stephanie Evic have also made loans to the Debtor, and as of the Petition Date the balance owing to the Evics was approximately $190,375 (the "Evic Loan", together with the Bleecker loan, collectively, the "Member Loans"). The Member Loans are demand loans, with interest payable in monthly installments calculated at seven percent (7%) simple interest. Allowed Class 6 Claims will receive monthly payments of interest only at the rate of five and a half percent (5.5%) per annum beginning thirty (30) days after the Effective Date of the Plan for five (5) years, with an automatic option in favor of the Reorganized Debtor for an additional five (5) years of monthly payments of interest only to the holders of Allowed Class 6 Claims if the payments under the Plan on year 5 are current. All unpaid principal and interest owing to the holders of Allowed Class 6 Claims will be paid on the tenth (10th) anniversary of the Effective Date of the Plan. Class 6 Claims are impaired and holders of Allowed Class 6 Claims will be entitled to vote to accept or reject the Plan.

# IX.
## OVERVIEW OF ADDITIONAL PLAN PROVISIONS

**A.** **Implementation of the Plan & Conditions to Effectiveness.**

The means of execution of the Plan are and will be as follows:

**1.** **Conditions Precedent to Occurrence of Effective Date**. It is a condition of the Effective Date that the Confirmation Order has been entered by the Bankruptcy Court and has become a Final Order. The Effective Date is expected to occur within eleven (11) calendar days of the entry of the Confirmation Order.

**2.** **Implementation**.

**(a)** **Cash Flow and Volvo Exit Financing**. Payments under the Plan will come from cash flow generated by the ongoing operation of the Debtor's business and from $3 million of Exit Financing obtained from Volvo according to the Term Sheet and addendum which are attached as Exhibit "A" to the Plan.. The Debtor also anticipates that rentals and cash flow generated from the continued operation of its business will increase and stabilize in the coming months, thereby increasing the cash flow for the remaining payments under the Plan.

**(b)** **Sales of Equipment.** The Reorganized Debtor is authorized to sell equipment that is subject to liens of Volvo in accordance with the Term Sheet and addendum that is attached as Exhibit "A" to the Plan. The Reorganized Debtor is authorized to sell equipment that is subject to the liens of the holders of Allowed Claims in Classes 4c through 4h for the current fair market value amounts set forth in Exhibits "B" through "G" to the Plan (subject to downward adjustment for payments made to the holders of Allowed Claims in Classes 4c through 4h, the "Release Price"). The Reorganized Debtor will remit the Release Price to the holders of Allowed Claims in Classes 4c through 4h whose collateral is sold following confirmation of the Plan.

**(c)** **Future Management of Debtor**. The Reorganized Debtor will continue to be operated by Jeff Bleecker and Lance Evic who will receive initial salaries of $125,000 each per year following the Effective Date.

**B.** **Resolution of Claims, Demands, and Causes of Action.**

**1.** **Preservation of Debtor' Claims, Demands, and Causes of Action**. All claims, demands, and causes of action of any kind or nature whatsoever held by, through, or on behalf of the Debtor arising before the Effective Date and that have not been resolved or disposed of prior to the Effective Date, are preserved in full for the benefit of the Debtor and the Debtor will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtor.

**2.** **Procedure for Determination of Claims.**

**(a)** **Objections to Claims**. Except as to any Claim that has been Allowed prior to the Effective Date, the Debtor may object to the allowance of any Claim against the Debtor or seek estimation on any Claim.

**(b)** **Disputed Claims**. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Claim is not an Allowed Claim by or on the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when a Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan.

**(c)** **Treatment of Contingent Claims**. Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

**3.** **Administrative Claims Bar Date**. Proofs of claim (or, for Professional Charges, fee applications) requesting payment of administrative costs and expenses incurred prior to the Effective Date pursuant to Sections 507(a)(1) and 503(b) of the Bankruptcy Code must be served and filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date; provided, however, that proofs of claim will not be required with respect to any unpaid post-petition operating expenses incurred in the normal course of the Debtor' businesses prior to the Effective Date. Any such Claim that is not served and filed within this time period will be forever barred. Any Claims for fees, costs, and expenses incurred by any Chapter 11 Professionals after the Effective Date will be paid in the ordinary course of the Debtor' businesses.

**C.** **Treatment of Executory Contracts.**

**1.** **Rejection of Executory Contracts**. The Plan contemplates and provides for the rejection, pursuant to Section 365 of the Bankruptcy Code, of any and all Executory Contracts of the Debtor which are in force on the Confirmation Date, except those Executory Contracts which were specifically assumed pursuant to an order of the Court.

**2.** **Assumption of Other Executory Contracts**. Before the Confirmation Hearing, the Debtor may file one or more motions identifying any Executory Contracts that it intends to assume as of the Effective Date; and such motions and the Bankruptcy Court's orders thereon will be deemed incorporated in the Plan. All Executory Contracts not otherwise assumed will be rejected as of the Confirmation Date.

**3.** **Rejection Claims Bar Date**. Every Claim asserted by a Creditor arising from an Executory Contract that is rejected under the Plan must be filed with the Bankruptcy Court no later than the first Business Day that is thirty (30) days after the Effective Date. Every such Claim that is timely filed will be treated under the Plan as a General Unsecured Claim. Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

### D.    Miscellaneous Plan Provisions.

**1.    Retention of Jurisdiction**. As described in detail in the Plan, the Plan provides for the retention of jurisdiction by the Bankruptcy Court over various aspects of the Debtor' Bankruptcy Case from and after the Effective Date.

**2.    Exculpation and Limitation of Liability**. Neither the Debtor  nor any of its respective present or former members, managers, employees, advisors, attorneys, or agents will have or incur any liability to any holder of a Claim or any other party-in-interest or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the extension of credit to the Debtor during the Bankruptcy Case pursuant to debtor-in-possession financing or the use of cash collateral, efforts to obtain confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, and in all respects such parties will be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Bankruptcy Case.

**3.    General Injunction**. Except as otherwise expressly provided in the Plan, the Confirmation Order shall provide, among other things, that all parties-in-interest who have held, hold, or may hold Claims are permanently enjoined on and after the Effective Date from:  (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtor or any successor-in-interest of the Debtor, against property of the Debtor, or against property of any successor-in-interest of the Debtor; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any successor-in-interest of the Debtor, property of the Debtor, or against property of any successor-in-interest of the Debtor with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or any successor-in-interest of the Debtor, against property of the Debtor, or against property of any successor-in-interest of the Debtor with respect to any such Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or any successor-in-interest of the Debtor, against property of the Debtor, or against property of any successor-in-interest of the Debtor, with respect to any such Claim; (e) conducting any form of discovery from the Debtor with respect to any such Claim, or any successor-in-interest of the Debtor; and/or (f) harassing the Debtor or any successor-in-interest of the Debtor.

**4.    Vesting**. As of the Effective Date of the Plan, AER shall be vested with all of the Assets of the Estate.  All assets transferred to the AER shall be free and clear of all liens, claims, and interest of creditors and parties-in-interest, except as specifically provided in the Plan.  Upon the Effective Date, except as provided in the Plan, the Debtor shall be free to borrow without further Bankruptcy Court order, such sums of money upon such terms and conditions as it may, in its sole discretion, determine, including the granting of liens and purchase money security interests.

**5.    Payment of Statutory Fees and Filing of Quarterly Reports**. All fees payable pursuant to 28 U.S.C. § 1980, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance

with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

**6.** **Delay of Enforcement of Claims Against Owners of AER**. Entry of the Confirmation Order will temporarily restrain Creditors from taking any of the following actions against any members of the Debtor, or against any property in which members of the Debtor hold an interest, on account of any judgments, claims or causes of action that arise out of or relate to Claims against the Debtor or the Estate (the "Restrained Claims"), including: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Restrained Claim; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order with respect to any Restrained Claim; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind with respect to any Restrained Claim; or (d) harassing the members of the Debtor with respect to any Restrained Claim. The prohibition from proceeding with Restrained Claims will remain in effect until the earlier of: (x) five (5) years following the Effective Date; or (y) for Creditors whose Allowed Claims are the subject of a default by the Reorganized Debtor under the terms of the Plan, the failure of the Debtor to cure the default within thirty (30) days following the delivery of a written notice of default.

## X.
## FEDERAL TAX CONSEQUENCES

**A.** **No Federal Tax Consequences.**

AER is an Arizona limited liability company (LLC). LLCs are pass-through entities for federal income tax purposes and are not subject to federal income tax; the members are directly taxed individually on the income, taking into account the member's share of the profits and losses. Nevertheless, each holder of a claim is urged to consult with its own tax advisor regarding the federal, state, local and other tax consequences of the Plan. No rules have been requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.

## XI.
## VOTING PROCEDURES AND REQUIREMENTS

**A.** **Parties Entitled to Vote.**

If you hold an Allowed Claim that is "impaired" under the Plan, you are entitled to vote to accept or reject the Plan. Accordingly, to be entitled to vote, your Claim must be "allowed" as set forth in Section 502 of the Bankruptcy Code or temporarily allowed as set forth in Bankruptcy Rule 3018(a). Additionally, Section 1126(f) of the Bankruptcy Code permits you to vote to accept or reject the Plan only if your Claim is "impaired."

**B.** **Procedures for Voting.**

**1.** **Submission of Ballots**. After this Disclosure Statement has been approved by the Bankruptcy Court, all Creditors whose votes are solicited (as explained above) will be sent (a) a ballot, together with instructions for voting (the "Ballot"); (b) a copy of this Disclosure Statement as approved by the Bankruptcy Court; and (c) a copy of the Plan. You should read the Ballot

carefully and follow the instructions. Please use only the Ballot sent with this Disclosure Statement. You should complete your Ballot and return it to:

> GALLAGHER & KENNEDY, P.A.
> Attn: John R. Clemency
> 2575 EAST CAMELBACK ROAD
> Suite 1100
> PHOENIX, ARIZONA 85016
> Telephone: (602) 530-8000

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS LISTED ABOVE BY 5:00 P.M., MOUNTAIN STANDARD TIME, ON _____ __, 2010. IF YOUR BALLOT IS NOT TIMELY RECEIVED, IT WILL NOT BE COUNTED IN DETERMINING WHETHER THE PLAN HAS BEEN ACCEPTED OR REJECTED.**

A properly addressed, stamped return envelope will be included with your Ballot.

**2.    Procedures for Vote Tabulation**. In determining whether the Plan has been accepted or rejected, Ballots will be tabulated in accordance with the Court's Order approving this Disclosure Statement.

**3.    Withdrawal of Ballots**. A Ballot may not be withdrawn or changed after it is cast unless the Bankruptcy Court permits you to do so after notice and a hearing to determine whether sufficient cause exists to permit the change.

**4.    Questions and Lost or Damaged Ballots**. If you have any questions concerning voting procedures, if your Ballot is damaged or lost, or if you believe you should have received a Ballot but did not receive one, you may contact, Debtor's counsel, John Clemency, at the address and telephone number listed above.

**C.    Summary of Voting Requirements.**

In order for the Plan to be confirmed, the Plan must be accepted by at least one (1) impaired Class of Claims. For a Class of Claims to accept the Plan, votes representing at least two-thirds in claim amount and a majority in number of the Claims voted in that Class (not including votes of insiders) must be cast to accept the Plan.

> **IT IS IMPORTANT THAT HOLDERS OF ALLOWED IMPAIRED CLAIMS EXERCISE THEIR RIGHTS TO VOTE TO ACCEPT OR REJECT THE PLAN. THE DEBTOR ASSERTS THAT THE TREATMENT OF CREDITORS UNDER THE PLAN IS THE BEST ALTERNATIVE FOR CREDITORS, AND THE DEBTOR RECOMMENDS THAT THE HOLDERS OF ALLOWED CLAIMS VOTE IN FAVOR OF THE PLAN.**

The specific treatment of each Class under the Plan is described in the Plan and is summarized in this Disclosure Statement.

## XII.
## LIQUIDATION ANALYSIS

The table below reflects the estimated recoveries of creditors under the Plan and under a Chapter 7 liquidation of the Debtor. The estimated recoveries are based on the Inventory values ascribed by Debtor that are attached as Exhibit "B" to this Disclosure Statement, as well as the current fair market values set forth in Exhibits "B" through "G" to the Plan.

| Claimant/Class | Claim Amount | Plan Recovery | Chapter 7 Recovery |
|---|---|---|---|
| Administrative Claims (Class 1) | $50,000 | $50,000 | $25,000 |
| Priority Tax Claims (Class 2) | Unknown | Unknown | Unknown |
| Secured Tax Claims (Class 3) | $34,000 | $34,000 | $34,000 |
| Secured Claims (Class 4)[1] | $8,154,498[2] | $8,154,498[2] | $8,154,498[2] |
| Unsecured Claims (Class 5) | $6,272,833 | $6,272,833 | $0 |
| Related Party Unsecured Claims (Class 6) | $2,500,000 | $2,500,000 | $0 |
| Member Interests (Class 7) | NA | Retained | Extinguished |
| **Totals** | **$17,011,331** | **$17,011,331** | **$8,213,498** |

## XIII.
## CONFIRMATION OF THE PLAN

### A.    Confirmation Hearing.

Section 1128(a) of the Bankruptcy Code provides that the Bankruptcy Court, after notice, will hold a Confirmation Hearing on the Plan. The Confirmation Hearing will be held at the United States Bankruptcy Court in Courtroom 446, 38 South Scott Avenue, Tucson, Arizona, on _____, 2010, at 10:00 a.m. **THE HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE COURT WITHOUT FURTHER NOTICE EXCEPT FOR AN ANNOUNCEMENT MADE AT THE HEARING.**

### B.    Objections to Confirmation.

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of the Plan, regardless of whether it is entitled to vote. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. **IF AN OBJECTION TO CONFIRMATION IS NOT TIMELY MADE, THE COURT NEED NOT RECEIVE AND CONSIDER IT.** All objections to confirmation of the Plan must be filed with the Bankruptcy Court and served on the

---

[1] Plus accrued and accruing interest, and recoverable costs and expenses.
[2] The following discounts were applied based on Debtor's analysis: Equipment- 25%; Accounts Receivable- 25%; Miscellaneous Personal Property and Parts Inventory- 85%

19

Debtor's counsel at the address set forth above, on the United States Trustee, and on any party-in-interest who has requested notice in the Debtor's Bankruptcy Case, by _____, **2010**.

## C.   Requirements for Confirmation of the Plan.

**1.   Confirmation Under Section 1129(a) of the Bankruptcy Code**.   At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  Such requirements include, among others:

(a)   That the Debtor has complied with the applicable provisions of Chapter 11, including the provisions of Sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and interests and contents of a plan of reorganization.

(b)   That the Debtor has proposed the Plan in good faith and not by any means forbidden by law.

(c)   That any payment made or promised by the Debtor to any Person for services, costs, or expenses in connection with the Bankruptcy Case or the Plan has been approved by or is subject to approval by the Bankruptcy Court as reasonable.

(d)   That the Debtor has disclosed the identity and affiliations of Persons proposed to serve as officers after confirmation.

(e)   That one or more of the impaired Classes of Claims has voted to accept the Plan.

(f)   That the Plan is in the best interests of holders of Claims and Equity Interests; that is, each holder of an Allowed Claim or Allowed Equity Interest either has accepted the Plan or will receive on account of its Claim or Equity Interest property with a value, as of the Effective Date, that is not less than the amount that the holder of such Claim or Equity Interest would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

(g)   That the Plan is feasible; that is, confirmation is not likely to be followed by the need for liquidation or further reorganization of the Debtor unless that is provided for in the Plan.  The Debtor's Plan so provides; thus, feasibility is not an issue.

## 2.   Debtor Believes the Plan Satisfies Bankruptcy Code Requirements.

**(a)   Best Interests Test and Liquidation Analysis**.  Under the best interests test, the Plan is confirmable if, with respect to each impaired Class of Claims or Equity Interests, each holder of an Allowed Claim or Allowed Equity Interest in such Class either: (i) has accepted the Plan; or (ii) will receive or retain under the Plan, on account of its Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

As set forth above, the Debtor believes the distributions to Creditors under the Plan will meet or exceed the recoveries that Creditors would receive in a Chapter 7 liquidation of the Debtor and its Estate. The Debtor believes that the Plan provides an equal or better return to Creditors than they can otherwise receive under Chapter 7, and therefore the best interests of creditors test is met.

**(b)** **Feasibility of the Plan**. Section 1129(a)(11) of the Bankruptcy Code includes what is commonly described as the "feasibility" standard. In order for the Plan to be confirmed, the Bankruptcy Court also must determine that the Plan is feasible - that is, that the need for further reorganization or a subsequent liquidation of the Debtor is not likely to result following confirmation of the Plan. As set forth in this Disclosure Statement and in the Plan, the Debtor believes the Plan is feasible. Attached to this Disclosure Statement as Exhibit "E" are cash flow projections prepared by AER which reflects the ability of AER to make the payments called for under the Plan.

**(c)** **Acceptance by an Impaired Class**. Because the Plan impairs some Classes of Claims, Section 1129(a)(10) of the Bankruptcy Code requires that, for the Plan to be confirmed, at least one impaired Class must accept the Plan by the requisite vote without counting the votes of any "insiders" (as that term is defined in Section 101(31) of the Bankruptcy Code) contained in that Class. The Debtor believes that at least one impaired Class will vote to accept the Plan.

**(d)** **Confirmation Under Section 1129(b) of the Bankruptcy Code**. Although Section 1129(a)(8) of the Bankruptcy Code requires that the Plan be accepted by each Class that is impaired by the Plan, Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may still confirm the Plan at the request of the Debtor if all requirements of Section 1129(a) of the Bankruptcy Code are met except for Section 1129(a)(8) and if, with respect to each Class of Claims or Equity Interests that (a) is impaired under the Plan, and (b) has not voted to accept the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." This provision commonly is referred to as a "cramdown." The Debtor has requested cramdown confirmation of the Plan with respect to any such non-accepting Class of Creditors as well as the deemed rejecting Class of Equity Interests, who will receive nothing. **The Debtor believes that, with respect to such Class or Classes, the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code.**

**(1)** **Unfair Discrimination**. A plan of reorganization "does not discriminate unfairly" if: (i) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are related to those of the non-accepting class; and (ii) no class receives payments in excess of that which it is legally entitled to receive on account of its Claims or Equity Interests. The Debtor assert that under the Plan: (i) all classes of impaired Claims are being treated in a manner that is consistent with the treatment of other similar classes of Claims; and (ii) no Class of Claims will receive payments or property with an aggregate value greater than the sum of the Allowed Claims in the Class. Accordingly, the Debtor believes that the Plan does not discriminate unfairly as to any impaired Class of Claims or Equity Interests.

**(2)** **Fair and Equitable Test**. The Bankruptcy Code establishes different "fair and equitable" tests for Secured Creditors, Unsecured Creditors, and holders of Equity Interests, as follows:

**(i)** **Secured Creditors**. With respect to a secured claim, "fair and equitable" means that a plan provides that either (A) the holder of the secured claim in an impaired class retains the liens securing such claim, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the amount of such allowed claim, and that the holder of such claim receives on account of such claim deferred cash payments totaling at least the amount of such allowed claim, of a value, as of the effective date, of at least the value of such holder's interest in the estate's interest in such property; (B) for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claim, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clauses (A) and (C); or (C) the realization by such holder of the "indubitable equivalent" of such claim.

**(ii)** **Unsecured Creditors**. With respect to an unsecured claim, "fair and equitable" means that a plan provides that either (A) each impaired unsecured creditor receives or retains property of a value, as of the effective date, equal to the amount of its allowed claim; or (B) the holders of claims and equity interests that are junior to the claims of the dissenting class will not receive or retain any property under the plan.

**(iii)** **Equity Interest Holders**. With respect to holders of equity interests, "fair and equitable" means that a plan provides that either (A) each holder will receive or retain under the plan property of a value, as of the effective date, equal to the greater of: (1) the fixed liquidation preference or redemption price, if any, of such interest; or (2) the value of such interest; or (B) the holders of equity interests that are junior to the non-accepting class will not receive any property under the plan.

The Debtor believes the Plan complies with the Claims priority established by the Bankruptcy Code and thus the "fair and equitable" test of the Bankruptcy Code (including the absolute priority rule) is met with respect to the Secured Creditors and the Equity Interest holders under the Plan.

## XIV.
## ALTERNATIVES TO THE PLAN

If the Plan is not confirmed, several different events could occur: (1) the Debtor or a third party could propose another plan providing for different treatment of certain Creditors; (2) Secured Creditors, if any, could move for relief from the automatic stay to allow them to foreclose their liens against their collateral, which may be granted by the Court if an alternative plan is not confirmed in a reasonable period of time; (3) the Bankruptcy Court (after appropriate notice and

1  hearing) could dismiss the Bankruptcy Case or convert such to a case under Chapter 7 if an
   alternative plan is not confirmed in a reasonable period of time; or (4) the Bankruptcy Court could
2  approve a sale of the Debtor's remaining assets to the highest and best bidder an auction sale
   under Section 363 of the Bankruptcy Code.

3  ## RECOMMENDATION AND CONCLUSION

4       The Debtor believes that the Plan provides the best available alternative for maximizing
   the recoveries that Creditors will receive from the Debtor's Assets.    Therefore, the Debtor
5  recommends that all Creditors that are entitled to vote on the Plan vote to accept the Plan.

6
        Date:  January 14, 2010

7                                    Arizona Equipment Rental, I, LLC

8                                    By: /s/ Jeffrey Bleecker_____
                                          Name:      Jeffrey S. Bleecker
9                                         Title:      Owner/Manager

10

11 PREPARED AND SUBMITTED BY:

12 GALLAGHER & KENNEDY, P.A.

13 By: /s/ Lindsi Weber_____
       John R. Clemency
14     Lindsi M. Weber
       2575 East Camelback Road
15     Phoenix, Arizona 85016-9225
       Attorneys for Arizona Equipment Rental I, LLC

16
   COPIES of the foregoing were served
17 this 14th day of January, 2010, via
   first-class, U.S. Mail, Email, and/or Facsimile
18 to the parties on the attached service list.

19   /s/ Maricella Nunez

20

21

22
   2331832/22373-0001                          23

# Master Mailing List

United States Trustee
230 N. First Avenue, Suite 204
Phoenix, Arizona 85003
Email: christopher.j.pattock.usdoj.gov

David E. Leta
SNELL & WILMER, L.L.P.
15 West South Temple, suite 1200
Salt Lake City, UT 84101
Email: dleta@swlaw.com
*Attorneys for Volvo Commercial Finance*

Jonathan M. Saffer
Nathan G. Kanute
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630
Email: jmsaffer@swlaw.com
Email: nkanute@swlaw.com
*Attorneys for Volvo Commercial Finance*

Rob Charles
LEWIS AND ROCA, LLP
One Church Avenue, Suite 700
Tucson, AZ 85701-1611
Email: RCharles@LRLaw.com
*Attorney for Volvo Construction
Equipment Rents, Inc.*

Edwin B. Stanley, Esq.
SIMBRO& STANLEY, PLC
8767 E. Via De Comercio, Ste. 103
Scottsdale, AZ 85258
Email: bstanley@simbroadstanley.com
*Attorneys for Siemens Financial
Services, Inc.*

Alan M. Levinsky
BUCHALTER NEMER
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
Email: alevinsky@buchalter.com
*Attorneys for The Huntington National
Bank*

Arlene N. Gelman, Esq.
Jonathan E. Aberman, Esq.
VEDDER PRICE, P.C.
222 N. LaSalle Street, Suite 2600
Chicago, IL 60601
Email: agelman@vedderprice.com
Email: jaberman@vedderprice.com
*Attorneys for Siemens Financial
Services, Inc.*

Linda Boyle
TW Telecom, Inc.
10475 Park Meadows Drive, #400
Littleton, OH 80124
Email: linda.boyle@twetelecom.com

John H. Rowland
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 1000
Nashville, TN 37201
Email: jrowland@bakerdonelson.com
*Attorney for Volvo Construction
Equipment Rents, Inc.*

Michael R. Johnson
Ray Quinney & Nebeker, P.C.
36 South State Street, Suite 1400
Salt Lake City, UT 84145-0385
mjohnson@rqn.com
*Attorneys for Komatsu Financial Limited
Partnership*

CNH Capital
P.O. Box 292
Racine, WI 53403
nacustomerserviceaccount@cnh.com

Atlas Copco (Compressors)
7500 Remittance Drive, Suite 3009
Chicago, IL 60675-3009

Business Music, Inc.
P.O. Box 2568
Amarillo, TX 79105

Dixie Diamond Manufacturing
205 Buxton Court, N.W.
Lilburn, GA 30047-5945

GE Capital Leasing
P.O. Box 3083
Cedar Rapids, IA 52406

Kevin J. Blakeley
Gammage & Burnham, PLC
Two North Central Avenue, 18th Flr.
Phoenix, AZ 85004
Email: kblakley@gblaw.com
*Attorney for People's Capital and
Leasing Corp.*

Steve M. Cox
Waterfall, Economidis, Caldwell,
Hanshaw, Villama
5210 E. Williams Circle
Tucson, AZ 85711-4478
Email: smcox@wechv.com
*Attorneys for GE Capital Solutions*

PNC Equipment Finance
995 Dalton Ave.
Cincinnati, OH 45203
(513) 455-2390 (Office)
(866) 298-4481 (Fax)
Email: Jacqueline.Nelson@pnc.com

BC Wire Rope & Rigging
2720 E. Regal Park Drive
Anaheim, CA 92806

Ditch Witch
4028 S. 36th Street
Phoenix, AZ 85040

Ford Credit
P.O. Box 7172
Pasadena, CA 91109

GE Capital Solutions
125 E. Carpenter Freeway, Suite 1000
Irving, TX 75062
Email: joseph1.davis@ge.com

2296427/22373-0001

General Electric Capital
Corporation
3000 Lakeside Drive, 200n
Deerfield, IL 60015

GE Capital/Ingersoll Rand
Bob Chiocchio
Dennis Duffany
P.O. Box 3083
Cedar Rapids, IA 52406-3083
Email: robert.chiocchio@ge.com
Email: dennis.duffany@ge.com

Gelco Leasing
3 Capital Drive
Eden Prairie, MN 55344

Giufre Bros. Cranes
6635 S. 13th Street
Milwaukee, WI 53221

Golden Equipment Company
P.O. Box 6038
Albuquerque, NM 87197

Grainger
3415 S. Dodge Blvd.
Tucson, AZ 85713

Huntington National Bank
P.O. Box 701096
Cincinnati, OH 45270

Jenkins Athens Insurance Service
P.O. Box 5668
Concord, CA 94524

JLG Industries, Inc.
14943 Collection Center Drive
Chicago, IL 60693

Genie/Terex
12506 Collections Drive
Chicago, IL 60693

John Deere Credit
P.O. Box 6600
Johnston, IA 50131-6600

Jones Outdoor Advertising
10657 E. Old Vail Connection Road
Tucson, AZ 85747

Komatsu Financial
P.O. Box 99303
Chicago, IL 60693-9303

Lackmond Products
1590 N. Roberts Road NW, Suite 101
Kennesaw, GA 30144

Machinery Trader
P.O. Box 85673
Lincoln, NE 68501

Macks Auto Supply
P.O. Box 916
Safford, AZ 85548

Magnum Products
P.O. Box 681070
Milwaukee, WI 53268

McCandles of Arizona
2802 N. Flowing Wells Road
Tucson, AZ 85705

- 3 -

Merle's Automotive Supply
P.O. Box 27126
Tucson, AZ 85726-7126

Mi-T-M
8650 Enterprise Drive
Peosta, IA 52068

Multiquip, Inc.
23688 Network Place
Chicago, IL 60673-1633

MTA Distributors
P.O. Box 409439
Atlanta, GA 30384

Muzak
P.O. Box 71070
Charlotte, NC 28272-1070

Multiquip, Inc.
23688 Network Place
Chicago, IL 60673-1633

National City Commercial Capital
995 Dalton Avenue
Cincinnati, OH 45203

National Directory Service
3200 El Camino Real, Ste. 220
Irvine, CA 92602

Northern Safety
P.O. Box 4250
Utica, NY 13504

Office Depot Credit Plan
P.O. Box 689020
Des Moines, IA 50368

People's Capital
255 Bank Street
Waterbury, CT 06702

Pima County Treasurer's Office
115 North Church Avenue
Tucson, AZ 85701

Saint-Gobain Abrasives
P.O. Box 198506
Atlanta, GA 30384

Seis Zorros, LLC
P.O. Box 11790
Chandler, AZ 85248

Siemens Financial Services, Inc.
170 Wood Avenue South
Iselin, NJ 08830

Sparklett's
Attn: AR Processing
3302 W. Earll Drive
Phoenix, AZ 85017

Sparkletts
P.O. Box 660579
Dallas, TX 75266

Stewart & Stevenson Services
P.O. Box 200441
Houston, TX 77216-0441

United Parcel Service
P.O. Box 894820
Los Angeles, CA 90189

US Bancorp Equipment Finance
P.O. Box 790413
Saint Louis, MO 63179-0413

2296427/22373-0001

Volvo Financial Services
7025 Albert Pick Road, Suite 105
Greensboro, NC 27409

Western Refining Wholesale
P.O. Box 52400
Phoenix, AZ 85072

Wacker
P.O. Box 88058
Milwaukee, WI 53288-0058